Filed 10/17/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARY LEGER, as represented, etc., Plaintiff and Respondent, v. R.A.C. ROLLING HILLS L.P. et al., Defendants and Appellants. | D080705 (Super. Ct. No. 37-2022-00007625-CU-PO-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Joel Wohlfeil, Judge. Affirmed.

Wilson Getty, William C. Wilson and Dawn A. Phleger; Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Niddrie Addams Fuller Singh and John S. Addams; Pick Law and Lukas I. Pick; Elder Law & Advocacy and Andrew A. Thompson for Plaintiff and Respondent.

R.A.C. Rolling Hills LP, dba ActivCare at Rolling Hills Ranch, and ActivCare Living, Inc. (together, ActivCare), appeal from an order denying their petition to compel arbitration in the elder abuse lawsuit filed by Mary Leger. (Code Civ. Proc., § 1281.2.)[1] ActivCare contends the trial court erred

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

in concluding that it had waived its right to arbitration because it moved with alacrity by seeking to compel arbitration less than 30 days after filing its answer. Under the unique facts of this case, we conclude substantial evidence supported the trial court's waiver finding and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Leger is 92 years old and suffers from late-stage dementia, severe diabetes, and severe contractures.[2] She is under hospice care and has a limited life expectancy due to her late-stage dementia. In January 2015, the San Diego Superior Court appointed two conservators for Leger, her daughters Karen Ochoa and Barbara Bleichwehl. Ochoa was appointed as conservator of Leger's person and estate, and Bleichwehl appointed as conservator of Leger's person.[3]

In February 2020, Ochoa admitted Leger to ActivCare, a residential care facility for the elderly. At that time, Ochoa agreed to binding arbitration of any claims Leger might have against the facility.[4] On February 28, 2022,[5] Leger, acting as an individual, filed a complaint against ActivCare alleging, among other things, elder abuse, claiming that ActivCare left her in bed

---

[2] A contracture is "a permanent shortening (as of muscle, tendon, or scar tissue) producing deformity or distortion." (Merriam-Webster's Online Dict. (2021) <http://www.merriam-webster.com/dictionary/contracture> [as of Oct. 11, 2022], archived at <https://perma.cc/6W5S-77PC>.)

[3] The appointment orders are not part of the record on appeal. The parties, however, do not dispute that Leger is under a valid conservatorship.

[4] For purposes of this appeal, the parties concede the validity of the arbitration agreement.

[5] All further date references are to 2022.

causing her to become emaciated, severely contracted, and unable to walk. On March 10, ActivCare was served with the complaint. On March 15, Bleichwehl filed a petition to act as Leger's guardian ad litem. On March 21, the trial court granted the petition. On March 29, Leger filed a motion for trial preference. On April 6, ActivCare filed its answer alleging numerous affirmative defenses, including the existence of a binding arbitration agreement.

On April 11, ActivCare filed its opposition to Leger's preference motion. ActivCare claimed it would be prejudiced if the court granted trial preference because, among other things, elder and dependent adult abuse claims generally take 18 to 20 months to litigate. ActivCare requested 12 "accommodations" should the court grant the motion for trial preference. ActivCare never mentioned the existence of an arbitration agreement and that it would be filing a petition to compel arbitration.

On April 22, the trial court granted Leger's motion for trial preference, ordered that all motions and discovery be completed by August 6, and set trial for August 19. ActivCare demanded a jury trial. Three days later, on April 25, ActivCare's counsel sent an email to Leger's counsel demanding that the arbitration agreement be enforced and requesting that Leger stipulate to arbitration. On April 29, Leger declined to stipulate to arbitration. On May 4, ActivCare filed an ex parte application for an order shortening time to hear its petition to compel arbitration, or to hear and rule upon the petition and stay discovery until an arbitrator could be agreed upon. The following day, the trial court set the hearing on the petition for May 26 and " 'froz[e]' " discovery based on the possibility that the arbitration agreement would be enforced. On May 13, Leger opposed the petition

arguing, among other things, that ActivCare waived the right to compel arbitration.

The trial court issued a tentative ruling denying ActivCare's petition to compel arbitration based on waiver. It noted that ActivCare offered no explanation why its petition to compel arbitration could not be filed after service of the complaint. It concluded that ActivCare acted inconsistently with the right to arbitrate by waiting until after the court ruled on Leger's motion for trial preference and that this evidenced the progress of " 'litigation machinery.' " It found that compelling arbitration would greatly prejudice Leger given her age and health and that ActivCare did not explain how arbitration could be concluded by the August 19 trial date.

At the May 26 hearing on the tentative ruling, defense counsel claimed that the petition to compel arbitration could not be filed earlier because it needed to obtain the entire arbitration agreement and confirm that Ochoa had the authority to bind Leger. The court took the matter under submission and then requested supplemental briefing on the import of *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399 (*Laswell*) to this action, and if the arbitration agreement is enforced, whether the trial court can mandate an expedited arbitration timeline. After considering the supplemental briefing, the trial court confirmed its order denying the petition to compel arbitration and lifted the discovery stay.

The court commented that *Laswell, supra*, 189 Cal.App.4th 1399, did not address or apply the waiver exception set forth in section 1281.2, subdivision (a) and did not compel a different result. It found that although ActivCare's delay in filing its petition was "comparatively minor" it was "unreasonable, manifest and prejudicial given the unique circumstances of this action." It noted that ActivCare's opposition to Leger's motion for trial

4

preference did not reference an intent to seek to compel arbitration and instead made multiple references to ActivCare's ability to conduct discovery and prepare for trial, statements that were "inconsistent with an intent to invoke arbitration." Although Leger's prejudice could be minimized through an expedited arbitration, the court found it lacked the authority to make such an order, ActivCare has not offered to stipulate to an expedited arbitration, and it is unknown whether an expedited arbitration is even possible. ActivCare timely appealed.

DISCUSSION

I. *LEGAL PRINCIPLES*

Although both "Federal and state laws reflect a strong public policy favoring arbitration as ' " 'a speedy and relatively inexpensive means of dispute resolution,' " ' " a party waives a contractual right to arbitrate by failing to promptly enforce this right after a lawsuit has been brought in court. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 (*Lewis*), *id.* p. 444 ["waiver is more like a forfeiture arising from the nonperformance of a required act"].) "[A] party that wishes to pursue arbitration must take ' "active and decided steps to secure that right" ' because an arbitration agreement ' "is not . . . self-executing." ' [Citation.] 'Mere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute. Both of these actions must be taken to secure for the participants the benefits of arbitration.' " (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 80–81.) Where an arbitration agreement does not specify a time limit for demanding arbitration, a party must demand arbitration within a reasonable

5

time.  (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30.)  " '[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' "  (*Ibid.*)

Relevant factors in assessing waiver claims include: " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citations.]"  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)  "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration."  (*Id.* at p. 1195.)

Waiver is not to be lightly inferred and the party seeking to establish it bears a "heavy burden of proof," with all doubts resolved in favor of arbitration.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.)  Nonetheless, waiver may be "implied, based on conduct indicating an intent to relinquish the right."  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)  "Whether a party waived the right to contractual arbitration is a factual question we review under the substantial evidence standard of review.  [Citations.]  The trial courts 'determination of this factual issue, " 'if

6

supported by substantial evidence, is binding on an appellate court.' " [Citations.] Only " 'in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court.' " [Citation.]' [Citations.] [¶] We infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance[.]' " (*Lewis, supra,* 205 Cal.App.4th at p. 443.)

## II. *SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S CONCLUSION THAT ACTIVCARE WAIVED ITS RIGHT TO COMPEL ARBITRATION*

In its order denying ActivCare's petition to compel arbitration, the trial court cited the factors set forth in *St. Agnes, supra,* 31 Cal.4th 1187. While the trial court did not make its findings within the context of these factors, its findings correspond with several of the *St. Agnes* factors.

The trial court found that ActivCare acted inconsistently with the right to arbitration by waiting until the court ruled on Leger's motion for trial preference and that this evidenced progress of the " 'litigation machinery.' " Construing all reasonable inferences in the manner most favorable to the trial court's ruling, substantial evidence supports these findings. (*Lewis, supra,* 205 Cal.App.4th at p. 443.)[6]

---

[6] We disagree with ActivCare's contention that our review is de novo because the trial court based its decision on undisputed chronological facts. We apply the de novo standard where "the facts are undisputed and *only one inference* may reasonably be drawn." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, italics added.) Here, while the facts are undisputed, the trial court could reasonably draw different inferences from the undisputed facts. Accordingly,

7

Leger served the summons and complaint on March 10. ActivCare filed its answer on April 6, alleging the existence of a binding arbitration agreement.[7] Despite knowing about the arbitration agreement, ActivCare waited until *after* it received an adverse ruling on Leger's motion for trial preference to claim its right to arbitration.[8] We reject ActivCare's argument that the trial court incorrectly emphasized that trial preference had been granted. Instead, it appears the trial court reasonably considered ActivCare's

---

we must consider the evidence in the light most favorable to the trial court's ruling.

[7] In unsworn statements at the hearing on the petition to compel arbitration, ActivCare's counsel informed the court that ActivCare had sent a copy of the arbitration agreement to Leger's family before the lawsuit was even filed.

[8] ActivCare blames Leger for filing her complaint in the trial court instead of initiating arbitration and argues her "deliberate strategy" pitted the speed of an arbitration hearing against extended court litigation on the threshold issue of arbitrability. " '[C]ontractual arbitration is in no sense . . . a usurpation or ouster of the judicial power vested in the trial court of this state by our Constitution. [Citation.] *As a result, there is nothing to prevent one of the parties to a contractual arbitration provision from resorting initially to an action at law.* [Citations.] The other party, if determined to pursue arbitration, must then take action to compel arbitration.' " (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 768.) " '[L]acking a request for arbitration, the courts stand ready, willing and able to decide controversies between the parties even though a provision for arbitration exists.' " (*Id.* at p. 769, italics deleted.) We also disagree that Leger raced to the courthouse and "weaponized" her trial preference motion as a means of avoiding arbitration. Leger was entitled to bring her motion after "all essential parties have been served with process or have appeared." (§ 36, subd. (c)(1).) Given Leger's age and poor health, her counsel cannot be faulted for bringing the motion as soon as possible.

actions between the period it filed its answer and received the trial court's ruling on Leger's motion for trial preference.

First, ActivCare could have requested an order shortening time to file its petition to compel arbitration so that its petition could be considered simultaneously with Leger's motion for trial preference. As ActivCare observed in its opening brief, "[i]f the arbitration agreement is valid and enforceable, any order for trial preference in another forum is nugatory." Instead, when opposing Leger's motion for trial preference, ActivCare never raised the existence of an arbitration agreement or its future intent to file a petition to compel arbitration. Accordingly, it never alerted the trial court of a significant issue that may have impacted the ruling on Leger's trial preference motion.

Instead, in opposing trial preference ActivCare argued that the trial date should be set "in due course" to give it "sufficient time to complete discovery and prepare for trial." Alternatively, should the trial court be inclined to grant trial preference, ActivCare requested 12 accommodations, including that Leger agree to shortened notice for a motion for summary judgment or summary adjudication, informal exchange of discovery, and not quash any subpoenas to her healthcare providers. At the hearing on the preference motion, ActivCare never indicated it would be filing a petition to compel arbitration and instead requested a jury trial. These actions are inconsistent with an intent to invoke arbitration. (*Lewis*, *supra*, 205 Cal.App.4th at p. 448 [" 'A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right.' "].)

9

ActivCare asserts that the caption of Leger's complaint misled it (she brought the action individually), it did not have notice that another party potentially had the authority to bind Leger to an arbitration agreement, and it did not know that Ochoa was Leger's conservator until late April, at which time it promptly reached out to Leger's counsel about agreeing to arbitration. The record contradicts these assertions. In its answer filed on April 6, almost one month before ActivCare filed its ex parte application for an order shortening time to file a petition to compel arbitration, ActivCare asserted arbitration as an affirmative defense. ActivCare submitted the admission agreement containing the arbitration provision as an exhibit in support of its petition to compel arbitration. The admission agreement, dated February 1, 2020, shows that below Ochoa's signature as the "responsible party" two boxes are checked indicating that Ochoa signed as the conservator of Leger's estate and person. Thus, ActivCare knew of Ochoa's authority to agree to arbitration two years before Leger filed this action.

The party seeking to compel arbitration has the "burden of proving the existence of an arbitration agreement." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)[9] ActivCare's argument shows it knew about the arbitration agreement and could have requested that Leger arbitrate the dispute shortly after being served with the summons and complaint. "As a preliminary matter," in

---

[9]    A petition to compel arbitration must "alleg[e] the existence of a written agreement to arbitrate a controversy." (§ 1281.2.) It also "must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference." (Cal. Rules of Court, rule 3.1330.)

10

ruling on a petition to compel arbitration the trial court is only required to make a finding regarding the existence of an arbitration agreement, not an evidentiary determination of its validity, and the "petitioner is not required to authenticate an opposing party's signature on an arbitration agreement . . . in moving for arbitration." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 845–846, italics deleted.)[10] As the trial court properly observed, ActivCare never explained why it could not have filed its petition to compel arbitration sooner.

ActivCare contends the trial court improperly switched Leger's heavy burden of establishing waiver to ActivCare, requiring that it show why it did not seek to compel arbitration sooner. We disagree.

The trial court properly addressed whether a waiver existed by applying the factors set forth in *St. Agnes*, *supra*, 31 Cal.4th 1187. ActivCare's own conduct of waiting to argue the existence of an enforceable arbitration agreement until *after* the trial court granted Leger's preference motion simply made the task of opposing Leger's waiver argument more difficult. If ActivCare wanted to enforce the arbitration agreement, it was up to it to timely do so under the circumstances.

The trial court could also reasonably infer that ActivCare's delay in mentioning its intent to enforce the arbitration agreement until after the trial court ruled on Leger's trial preference motion, progressed the litigation machinery. By that time, the court had already set the motion, discovery and expert exchange deadlines, and the trial readiness conference and the trial dates. ActivCare also had the opportunity to wait and see how the trial court

---

10    If an agreement to arbitrate exists, the burden then shifts to the party refusing arbitration to demonstrate the agreement is unenforceable. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

ruled on its 12 accommodation requests before raising the prospect of arbitration. As another court noted, litigants may not "test[] the water before taking the swim" and "go elsewhere" if the water is too chilly. (*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951.) Additionally, as noted by Leger's counsel, the preference motion informed ActivCare that Leger would likely not live long enough to see trial unless the trial date was accelerated and that Leger would use the proceeds from a successful trial for rehabilitation and to seek better care. Had the trial court denied trial preference, Leger would have been under pressure to settle.

Finally, the trial court found that compelling arbitration would "greatly prejudice [Leger] given [her] age and health" and it lacked the authority to order that arbitration be expedited. ActivCare has not challenged either finding. (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 484 ["[i]t is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence"].) Because ActivCare did not provide a proper argument challenging the sufficiency of the evidence supporting these factual findings, it has forfeited that issue on appeal.

Although we have come across no opinion directly on point with the facts of this case, the evidence and the general principles set forth above support the trial court's waiver finding and the record does not establish the lack of waiver as a matter of law. Accordingly, we must affirm the trial court's waiver ruling. (*Lewis, supra,* 205 Cal.App.4th at p. 453 ["It is not enough the trial court potentially could have reached a different conclusion;

12

rather, we may reverse the trial court's waiver finding only if the record establishes a lack of waiver as a matter of law."].)

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondent is entitled to costs on appeal.


McCONNELL, P.J.

WE CONCUR:


IRION, J.


DO, J.